IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAJOR BOYD WHITLEY, )
 )
        Plaintiff, )
 )
v. ) 1:19CV358
 )
SHERIFF VAN SHAW, et al., )
 )
        Defendants. )

**MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Plaintiff Major Boyd Whitley's motion for summary judgment. (Docket Entry 23.) Defendants Sheriff Van Shaw, Captain M. Nesbitt, and Lieutenant W. Wallace have filed a response. (Docket Entries 25, 27.) For the reasons stated herein, the Court will recommend that Plaintiff's motion for summary judgment be denied.

**BACKGROUND**

Plaintiff, a *pro se* prisoner and self-proclaimed Hebrew Israelite, filed this action pursuant to 42 U.S.C. § 1983 alleging a First Amendment violation of his religious rights. (*See generally* Complaint, Docket Entry 2.)[1] Specifically, Plaintiff alleges that staff at Cabarrus County Detention Center ("CCDC"), under the direction of Defendants, did not adequately accommodate Plaintiff in providing him a bible consistent with his faith even though the jail staff has provided Christian bibles to Christian inmates. (*Id.* at 3.) Plaintiff also alleges that the staff at CCDC effectively forced him to listen to Christian preaching by visitors from

---

[1] All citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

1

Gideon International when staff denied his request to be removed from his pod during the preaching. (*Id.* at 3, 7.) Finally, Plaintiff alleges that Defendants refused to accommodate Plaintiff's request for kosher meals during Passover. (*Id.* at 3.) Plaintiff claims that he filed grievances regarding these requests and was denied in all instances. (*Id.*)

Attached to his Complaint is an exhibit that contains excerpts of his communication with prison staff at CCDC regarding his grievances. (*Id.* at 7-18.) The exhibit provides that on December 8, 2018, Plaintiff submitted a grievance regarding his concerns with being forced to listen to Christianity preaching. (*Id.* at 7.) Several days later, Defendant Nesbitt responded reminding Plaintiff that he previously indicated closing his food tray slot would resolve the issue. (*Id.* at 9.)

On February 21, 2019, Plaintiff submitted a request for a kosher meal in observance of Passover that would take place between April 1, 2019 and April 7, 2019. (*Id.* at 13, 15.) Defendant Wallace responded, explaining that the prison would accommodate Plaintiff's request by providing a vegan meal that "meets the same requirements as the kosher diet." (*Id.* at 15.) Plaintiff responded that "the [kosher] diet is not the vegan diet for the [Passover] Israelite and Jewish people have to eat special diet and bread with no yeast." (*Id.* at 16.) Defendant Wallace ultimately responded, explaining that,

> [CCDC] recognizes the vegan diet (which we offer for religious reasons) to be applicable for the requested religious kosher diet as well. At this point I will not schedule you to receive the diet as you have stated that you do not want the diet we use for kosher, the vegan diet. Should you change your mind please let me know and I will be happy to accommodate your request for a special diet during your religious observance of New Moon.

(*Id.* at 17.)

2

In support of Defendants' opposition to Plaintiff's motion for summary judgment, Defendants filed the affidavit of Defendant Wallace. (*See* W. Joel Wallace Affidavit, Docket Entry 26.) According to the affidavit, the Gideons were permitted to enter the jail pods once per week on Sundays. (*Id.* ¶ 9.) If inmates did not desire to hear the Gideons' teachings, they remained in the cells and their food trays were closed by jail staff to prevent noise transmission. (*Id.*) Defendant Wallace indicates that "a[t] one time, [Plaintiff] told staff that this worked for him." (*Id.*) In any event, beginning May 2019, the Gideons no longer held service in the pods. (*Id.* ¶ 11.) Defendant Wallace also indicated that the Gideons, not CCDC, supplied bibles for inmates who wanted them. (*Id.* ¶ 10.) Plaintiff requested a copy of the Book of Yahweh, however CCDC has never had one. (*Id.*)

Defendant Wallace's affidavit also addressed CCDC's food services. The food service used by CCDC provides a vegan meal for inmates who request it. (*Id.* ¶ 12.) The vegan meal that CCDC provides "satisfies the requirements for a kosher meal, in that it contains none of the foods that would not be part of the kosher diet." (*Id.*) Defendant Wallace states that at no point did he nor any other jail staff try to influence Plaintiff regarding his religious beliefs. (*Id.* ¶ 13.)

## **DISCUSSION**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir.

3

Case 1:19-cv-00358-TDS-JLW   Document 33   Filed 07/06/20   Page 3 of 7

1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson*, 477 U.S. at 248-49.

"To state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant under color of . . . state law." *Davidson v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (quotations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). The Free Exercise Clause of the First Amendment guarantees inmates a "reasonable opportunity" to practice their religion. *Cruz v. Beto,* 405 U.S. 319, 322 (1972). A prisoner, however, does not enjoy the same full range of

freedoms as those not incarcerated; rather, state action violates a prisoner's constitutional rights if it burdens a prisoner's religious rights and is not reasonably related to a legitimate penological interest. *Turner v. Safley,* 482 U.S. 78, 89 (1987). In determining whether a reasonable relationship exists, the Supreme Court usually considers four factors: (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether alternatives for exercising the right remain to the prisoner; (3) what effect accommodation of the right will have on prison administration; and (4) whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *Id.* at 89-91. In a free exercise claim under the First Amendment, a prisoner must demonstrate both a sincere religious belief and a substantial burden in the exercise of that belief. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989).

Applying a more stringent protection, the Religious Land Use and Institutionalized Person Act ("RLUIPA")[2] provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person" serves to further a compelling government interest and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. In order to determine whether there has been a violation under RLUIPA, Plaintiff "bears the burden of establishing a prima facie case, showing (1) that he seeks to

---

[2] Plaintiff's Complaint does not explicitly state a RLUIPA claim. However, the Court will consider it given Plaintiff's pro se status.

engage in an exercise of religion, and (2) that the challenged conduct substantially burdens that exercise." *Krieger v. Brown,* 496 Fed.Appx. 322, 324 (4th Cir. 2012).

Following the Supreme Court's guidance, the Fourth Circuit has held that "a substantial burden on religious exercise occurs when a state or local government, through act or omission, put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotations and citations omitted). In contrast, "[n]o substantial burden occurs if the government action merely makes the religious exercise more expensive or difficult, but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion." *Dellinger v. Clarke,* 172 F. Supp. 3d 898, 902-03 (W.D.Va. 2016) (internal quotations and citations omitted). Upon Plaintiff establishing a prima facie case, the burden shifts to the government to show "that the limitation on the plaintiff's religious exercise is the least restrictive means of furthering a compelling government interest." *Krieger,* 496 Fed.Appx. at 324. "In assessing [whether there is a substantial] burden, courts must not judge the significance of the particular belief or practice in question." *Lovelace,* 472 F.3d at 187 n.2.

Based upon the evidence presented here considered in the light most favorable to Defendants, there is at minimum a genuine issue of material fact as to whether any CCDC regulation impinges upon Plaintiff's rights, and if so, whether the burden is reasonably related to legitimate prison interests. Likewise, a genuine issue of material fact exists as to whether Defendants have imposed a substantial burden to Plaintiff pursuant to RLUIPA, and if so, whether such limitations are the least restrictive means to further the prison's interests. Defendants deny any allegations of wrong-doing, but rather contend that they tried to

6

accommodate Plaintiff regarding his religious beliefs. More specifically, Defendant Wallace's affidavit suggests that (1) by Plaintiff's own admissions, the prison's protocol of closing the food tray was sufficient to resolve his noise concerns, (2) the CCDC does not own a Book of Yahweh, nor hands out Bibles to prisoners, and (3) the CCDC's vegan diet satisfies the requirements of a kosher meal. (Wallace Affidavit, Docket Entry 26.) Plaintiff's responsive affidavit refutes Defendant's claims, but does not resolve the genuine issues of material fact in this matter. (*See* Docket Entry 29.) As such, Plaintiff's motion seeking summary judgment should be denied.[3]

## CONCLUSION

Based upon the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for summary judgment (Docket Entry 23) be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

July 6, 2020
Durham, North Carolina

---

[3] In his motion for summary judgment, Plaintiff also contends that he has exhausted his administrative remedies as to the claims asserted in his Complaint. (*See* Docket Entry 23 at 2.) Defendants do not directly address this issue in their response, other than what appears to be a concession that it is not an issue here. (*See* Docket Entry 27 at 2 (". . . except on the issue of exhaustion of administrative remedy, which is not present in our case")). The Court need not address this issue any further. Even if Plaintiff did exhaust his administrative remedies, the issues noted herein still precludes summary judgment in his favor.